1
2
3
4
5
6
7

IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| **STEPHEN DUNCKHURST,**<br><br>                                      Petitioner,<br><br>     **v.**<br><br><br>**CONNIE GIPSON, Warden,**<br><br>                                      Respondent. | **Case No. 1:13-cv-01096 AWI MJS (HC)**<br><br>**FINDINGS AND RECOMMENDATION REGARDING PETITION FOR WRIT OF HABEAS CORPUS** |

        Petitioner is a state prisoner proceeding pro se with a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254.  Respondent is represented by John Powell of the office of the Attorney General.

**I.     PROCEDURAL BACKGROUND**

        Petitioner is currently in the custody of the California Department of Corrections pursuant to a judgment of the Superior Court of California, County of Kings, following his conviction by jury trial on July 1, 2010, for assault with a deadly weapon causing great bodily injury by an inmate serving a life term, assault with a deadly weapon by an inmate, possession of a weapon in prison, and various enhancements. (Lodged Doc. 1.) Petitioner was sentenced to an indeterminate sentence of thirty (30) years to life in state prison.  (Id.)

1    Petitioner filed a direct appeal with the California Court of Appeal, Fifth Appellate

2  District, which reversed the lesser included offense of assault with a deadly weapon by

3  an inmate, and otherwise affirmed the judgment on April 25, 2012. (Answer, ECF No.

4  18, Ex. A.)  On August 8, 2012, the California Supreme Court denied review.  (Lodged

5  Doc. 10.)

6    Petitioner filed a petition for writ of habeas corpus with the California Supreme

7  Court on December 3, 2012. (Lodged Doc. 11.) The Court denied the petition on March

8  20, 2013. (Lodged Doc. 12.)

9    Petitioner filed the instant federal habeas petition on July 17, 2013.  (Pet., ECF

10 No. 1 at 1.) Petitioner presents four claims for relief in the instant petition.  Petitioner

11 alleges that (1) his appellate counsel was ineffective for failing to present all the claims

12 that Petitioner requested that he present; (2) that Petitioner's speedy trial rights were

13 violated; (3) that Petitioner's due process rights were violated because there was

14 insufficient evidence to support his convictions; and (4) that the state court imposed an

15 illegal sentence.  (Id.)

16    Respondent filed an answer on December 24, 2013, and Petitioner filed a

17 traverse on March 31, 2014. (ECF Nos. 18, 26.) The matter stands ready for

18 adjudication.

19 **II.**    **STATEMENT OF THE FACTS**[1]

20    On August 1, 2008, prison guards spotted a disturbance in a yard
   involving three prisoners and ordered all the prisoners in the yard to the
21 ground. Guards saw Smith and Dunkhurst holding Veith by his wrists
   against a wall and making striking motions toward him. A guard shot
22 Dunkhurst in the leg with a rubber bullet. Dunkhurst fell near a drain and
   was seen moving his hands toward it.
23
      Veith, covered in blood, obeyed an order to come in from the yard,
24 holding his hand over his left arm, from which blood was spurting. He was
   examined and found to have slash wounds on his arm and back, which
25 required stitches. Smith and Dunkhurst had blood on their clothes and
   bodies but were uninjured, apart from the injury to Dunkhurst's leg from
26

27 [1]The Fifth District Court of Appeal's summary of the facts in its April 25, 2012 opinion is presumed correct.
   28 U.S.C. § 2254(e)(1).

28

2

the rubber bullet. Two sharp objects, one of metal and one of plastic, were later found in the drain. A blunt piece of plastic was found nearby; the sharp piece of plastic fit into it and was of the same color and kind of plastic.

The district attorney filed an information charging Smith and Dunkhurst with three counts each: (1) attempted murder (Pen. Code, §§ 187, 664); (2) assault with a deadly weapon while serving a life prison sentence (§ 4500); and (3) assault with a deadly weapon while in state prison (§ 4501). Count 4, possession of a dirk or dagger in prison (§ 4502, subd. (a)), applied to Dunkhurst only. The information alleged that the offense in count 1 was committed willfully, deliberately and with premeditation. (§ 664, subd. (a).) It alleged in connection with counts 1 to 3 that both defendants personally inflicted great bodily injury. (§ 12022.7, subd. (a).) The information also alleged that Smith had a number of prior convictions within the meaning of section 667, subdivision (a)(1), and that Dunkhurst had a number of prior convictions within the meaning of sections 667.5, subdivisions (a) and (b), and 667, subdivision (a)(1). Further, Smith had three prior strikes and Dunkhurst had two prior strikes under the Three Strikes Law, sections 667, subdivisions (b)-(i), and 1170.12, subdivisions (a)-(d).

During trial, upon the prosecution's motion, the court dismissed count 1, the allegations associated with count 1, and all the allegations under sections 667, subdivision (a)(1) and 667.5, subdivisions (a) and (b). This left counts 2 to 4, the great bodily injury allegations, and the prior strike allegations.

The jury found Smith and Dunkhurst guilty of counts 2 and 3 and Dunkhurst guilty of count 4. It found the great bodily injury enhancements true. Both defendants admitted the prior strike convictions. Smith's prior strike convictions were for murder in 1984, assault with a deadly weapon while in state prison in 1987, and assault with a deadly weapon while serving a life prison sentence in 2003. Dunkhurst's were for assault with a deadly weapon in 1990 and robbery in 1998.

For count 2, assault with a deadly weapon while serving a life prison sentence, the court imposed on each defendant a three-strikes sentence of 27 years (the three-year upper term, tripled) to life, plus three years for the great bodily injury enhancement. Defendants were to serve these sentences consecutively to the sentences they were already serving. For count 3, assault with a deadly weapon while in state prison, the court imposed on each defendant a sentence of 25 years to life, plus three years for the great bodily injury enhancement, and stayed these sentences pursuant to section 654. The court also imposed a sentence of 25 years to life on Dunkhurst for count 4 and stayed it pursuant to section 654. Both defendants were ordered to pay restitution fines of $10,000 and other fees.

People v. Smith, 2012 Cal. App. Unpub. LEXIS 3099, 2-5 (Cal. App. 5th Dist. Apr. 25, 2012). On appeal, the court reversed the convictions for assault with a deadly weapon by an inmate as the relevant state statute prohibited conviction of the lesser included

1 offense if an inmate was found guilty of assault with a deadly weapon by a life inmate.

2 (Id.)

**III.    DISCUSSION**

**A.    Jurisdiction**

Relief by way of a petition for writ of habeas corpus extends to a person in custody pursuant to the judgment of a state court if the custody is in violation of the Constitution or laws or treaties of the United States.  28 U.S.C. § 2254(a); 28 U.S.C. § 2241(c)(3); Williams v. Taylor, 529 U.S. 362, 375 fn.7 (2000).  Petitioner asserts that he suffered violations of his rights as guaranteed by the U.S. Constitution.  (Pet.)  In addition, the conviction challenged arises out of the Kings County Superior Court, which is located within the jurisdiction of this court.  28 U.S.C. § 2241(d); 2254(a).  Accordingly, this Court has jurisdiction over the instant action.

**B.    Legal Standard of Review**

On April 24, 1996, Congress enacted the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), which applies to all petitions for writ of habeas corpus filed after its enactment.  Lindh v. Murphy, 521 U.S. 320, 326 (1997); Jeffries v. Wood, 114 F.3d 1484, 1499 (9th Cir. 1997).  The instant petition was filed after the enactment of the AEDPA and is therefore governed by AEDPA provisions.

Under AEDPA, a person in custody under a judgment of a state court may only be granted a writ of habeas corpus for violations of the Constitution or laws of the United States.  28 U.S.C. § 2254(a); Williams, 529 U.S. at 375 n. 7.  Federal habeas corpus relief is available for any claim decided on the merits in state court proceedings if the state court's adjudication of the claim:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

4

1.   Contrary to or an Unreasonable Application of Federal Law

A state court decision is "contrary to" federal law if it "applies a rule that contradicts governing law set forth in [Supreme Court] cases" or "confronts a set of facts that [are] materially indistinguishable from [a Supreme Court case] but reaches a different result." Brown v. Payton, 544 U.S. 133, 141 (2005) (citing Williams, 529 U.S. at 405-06). "AEDPA does not require state and federal courts to wait for some nearly identical factual pattern before a legal rule must be applied . . . The statute recognizes . . . that even a general standard may be applied in an unreasonable manner." Panetti v. Quarterman, 551 U.S. 930, 953 (2007) (citations and quotation marks omitted). The "clearly established Federal law" requirement "does not demand more than a 'principle' or 'general standard.'" Musladin v. Lamarque, 555 F.3d 830, 839 (2009). For a state decision to be an unreasonable application of clearly established federal law under § 2254(d)(1), the Supreme Court's prior decisions must provide a governing legal principle (or principles) to the issue before the state court. Lockyer v. Andrade, 538 U.S. 63, 70-71 (2003). A state court decision will involve an "unreasonable application of" federal law only if it is "objectively unreasonable." Id. at 75-76 (quoting Williams, 529 U.S. at 409-10); Woodford v. Visciotti, 537 U.S. 19, 24-25 (2002). In Harrington v. Richter, the Court further stresses that "an *unreasonable* application of federal law is different from an *incorrect* application of federal law." 131 S. Ct. 770, 785 (2011) (citing Williams, 529 U.S. at 410) (emphasis in original). "A state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision." Id. at 786 (citing Yarborough v. Alvarado, 541 U.S. 653, 664 (2004)). Further, "[t]he more general the rule, the more leeway courts have in reading outcomes in case-by-case determinations." Id.; Renico v. Lett, 130 S. Ct. 1855, 1864 (2010). "It is not an unreasonable application of clearly established Federal law for a state court to decline to apply a specific legal rule that has not been squarely established by this Court." Knowles v. Mirzayance, 129 S. Ct. 1411, 1419 (2009) (quoted by Richter, 131 S. Ct. at 786).

2.    Review of State Decisions

"Where there has been one reasoned state judgment rejecting a federal claim, later unexplained orders upholding that judgment or rejecting the claim rest on the same grounds." See Ylst v. Nunnemaker, 501 U.S. 797, 803 (1991). This is referred to as the "look through" presumption. Id. at 804; Plascencia v. Alameida, 467 F.3d 1190, 1198 (9th Cir. 2006). Determining whether a state court's decision resulted from an unreasonable legal or factual conclusion, "does not require that there be an opinion from the state court explaining the state court's reasoning." Richter, 131 S. Ct. at 784-85. "Where a state court's decision is unaccompanied by an explanation, the habeas petitioner's burden still must be met by showing there was no reasonable basis for the state court to deny relief." Id. "This Court now holds and reconfirms that § 2254(d) does not require a state court to give reasons before its decision can be deemed to have been 'adjudicated on the merits.'" Id.

Richter instructs that whether the state court decision is reasoned and explained, or merely a summary denial, the approach to evaluating unreasonableness under § 2254(d) is the same: "Under § 2254(d), a habeas court must determine what arguments or theories supported or, as here, could have supported, the state court's decision; then it must ask whether it is possible fairminded jurists could disagree that those arguments or theories are inconsistent with the holding in a prior decision of this Court." Id. at 786. Thus, "even a strong case for relief does not mean the state court's contrary conclusion was unreasonable." Id. (citing Lockyer v. Andrade, 538 U.S. at 75). AEDPA "preserves authority to issue the writ in cases where there is *no possibility* fairminded jurists could disagree that the state court's decision conflicts with this Court's precedents." Id. (emphasis added). To put it yet another way:

> As a condition for obtaining habeas corpus relief from a federal court, a state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement.

Id. at 786-87. The Court then explains the rationale for this rule, i.e., "that state courts

1   are the principal forum for asserting constitutional challenges to state convictions." Id. at

2   787.   It follows from this consideration that § 2254(d) "complements the exhaustion

3   requirement and the doctrine of procedural bar to ensure that state proceedings are the

4   central process, not just a preliminary step for later federal habeas proceedings." Id.

5   (citing Wainwright v. Sykes, 433 U.S. 72, 90 (1977)).

6                            3.       Prejudicial Impact of Constitutional Error

7        The prejudicial impact of any constitutional error is assessed by asking whether

8   the error had "a substantial and injurious effect or influence in determining the jury's

9   verdict." Brecht v. Abrahamson, 507 U.S. 619, 623 (1993); see also Fry v. Pliler, 551

10   U.S. 112, 121-22 (2007) (holding that the Brecht standard applies whether or not the

11   state court recognized the error and reviewed it for harmlessness).   Some constitutional

12   errors, however, do not require that the petitioner demonstrate prejudice. See Arizona v.

13   Fulminante, 499 U.S. 279, 310 (1991); United States v. Cronic, 466 U.S. 648, 659

14   (1984).

15   **IV.      REVIEW OF PETITION**

16        **A.      Claim One: Ineffective Assistance of Appellate Counsel**

17        In his first claim, Petitioner contends that appellate counsel was ineffective for

18   failing to raise several issues on appeal. (See Am. Pet. at 3, 8-9.) Petitioner explains that

19   his first appellate counsel withdrew representation, and did not forward a list of grounds

20   for relief that Petitioner wanted to raise to the new appellate counsel, resulting in those

21   issues not being presented on appeal. (Id.) Petitioner attaches a copy of a letter from his

22   new appellate counsel, indicating that as of February 17, 2011, she had yet to receive

23   the list of issues that Petitioner presented to the original appellate attorney.

24                            1.       State Court Decision

25        Petitioner presented this claim by way of a petition for writ of habeas corpus to the

26   California Supreme Court. (Lodged Doc. 10.) The court denied the petition without

27   comment. (Lodged Doc. 11.) The state court decision did not address the merits of the

28   petition. Therefore, this Court, under § 2254(d), must determine what arguments or

1   theories could have supported the state court's decision and determine whether it is

2   possible fairminded jurists could disagree that those arguments or theories are

3   inconsistent with Supreme Court law. Richter, 131 S. Ct. at 786.

4               2.      Law Applicable to Ineffective Assistance of Counsel Claims

5          The law governing ineffective assistance of counsel claims is clearly established

6   for the purposes of the AEDPA deference standard set forth in 28 U.S.C. § 2254(d).

7   Canales v. Roe, 151 F.3d 1226, 1229 (9th Cir. 1998). In a petition for writ of habeas

8   corpus alleging ineffective assistance of counsel, the Court must consider two factors.

9   Strickland v. Washington, 466 U.S. 668, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984); Lowry

10  v. Lewis, 21 F.3d 344, 346 (9th Cir. 1994). First, the petitioner must show that counsel's

11  performance was deficient, requiring a showing that counsel made errors so serious that

12  he or she was not functioning as the "counsel" guaranteed by the Sixth Amendment.

13  Strickland, 466 U.S. at 687. The petitioner must show that counsel's representation fell

14  below an objective standard of reasonableness, and must identify counsel's alleged acts

15  or omissions that were not the result of reasonable professional judgment considering

16  the circumstances. Id. at 688; United States v. Quintero-Barraza, 78 F.3d 1344, 1348

17  (9th Cir. 1995). Judicial scrutiny of counsel's performance is highly deferential. A court

18  indulges a strong presumption that counsel's conduct falls within the wide range of

19  reasonable professional assistance. Strickland, 466 U.S. at 687; see also, Harrington v.

20  Richter, 131 S. Ct. 770, 178 L. Ed. 2d 624 (2011).

21         Second, the petitioner must demonstrate that "there is a reasonable probability

22  that, but for counsel's unprofessional errors, the result ... would have been different,"

23  Strickland, 466 U.S. at 694. Petitioner must show that counsel's errors were so

24  egregious as to deprive defendant of a fair trial, one whose result is reliable. Id. at 687.

25  The Court must evaluate whether the entire trial was fundamentally unfair or unreliable

26  because of counsel's ineffectiveness. Id.; Quintero-Barraza, 78 F.3d at 1348; United

27  States v. Palomba, 31 F.3d 1456, 1461 (9th Cir. 1994).

28         A court need not determine whether counsel's performance was deficient before

examining the prejudice suffered by the petitioner as a result of the alleged deficiencies. Strickland, 466 U.S. at 697. Since the defendant must affirmatively prove prejudice, any deficiency that does not result in prejudice must necessarily fail. However, there are certain instances which are legally presumed to result in prejudice, e.g., where there has been an actual or constructive denial of the assistance of counsel or where the State has interfered with counsel's assistance. Id. at 692; United States v. Cronic, 466 U.S., at 659, and n.25 (1984).

As the Supreme Court reaffirmed recently in Harrington v. Richter, meeting the standard for ineffective assistance of counsel in federal habeas is extremely difficult:

> The pivotal question is whether the state court's application of the Strickland standard was unreasonable. This is different from asking whether defense counsel's performance fell below Strickland's standard. Were that the inquiry, the analysis would be no different than if, for example, this Court were adjudicating a Strickland claim on direct review of a criminal conviction in a United States district court. Under AEDPA, though, it is a necessary premise that the two questions are different. For purposes of § 2254(d)(1), "an unreasonable application of federal law is different from an incorrect application of federal law." Williams, supra, at 410, 120 S. Ct. 1495, 146 L. Ed. 2d 389. A state court must be granted a deference and latitude that are not in operation when the case involves review under the Strickland standard itself.
>
> A state court's determination that a claim lacks merit precludes federal habeas relief so long as "fairminded jurists could disagree" on the correctness of the state court's decision. Yarborough v. Alvarado, 541 U.S. 652, 664, 124 S. Ct. 2140, 158 L. Ed. 2d 938 (2004). And as this Court has explained, "[E]valuating whether a rule application was unreasonable requires considering the rule's specificity. The more general the rule, the more leeway courts have in reaching outcomes in case-by-case determinations." Ibid. "[I]t is not an unreasonable application of clearly established Federal law for a state court to decline to apply a specific legal rule that has not been squarely established by this Court." Knowles v. Mirzayance, 556 U.S. 111, 129 S. Ct. 1411, 1419, 173 L. Ed. 2d 251, 261 (2009) (internal quotation marks omitted).

Harrington v. Richter, 131 S. Ct. at 785-86.

"It bears repeating that even a strong case for relief does not mean the state court's contrary conclusion was unreasonable." Id. at 786. "As amended by AEDPA, § 2254(d) stops short of imposing a complete bar on federal court relitigation of claims already rejected in state proceedings." Id. "As a condition for obtaining habeas corpus from a federal court, a state prisoner must show that the state court's ruling on the claim

1   being presented in federal court was so lacking in justification that there was an error

2   well understood and comprehended in existing law beyond any possibility for fairminded

3   disagreement." Id. at 786-87.

4          Here, Petitioner claims ineffective assistance of appellate counsel. The Due

5   Process Clause of the Fourteenth Amendment guarantees a criminal defendant the

6   effective assistance of counsel on his first appeal as of right. Evitts v. Lucey, 469 U.S.

7   387, 391-405, 105 S. Ct. 830, 83 L. Ed. 2d 821 (1985). Claims of ineffective assistance

8   of appellate counsel are reviewed according to the standard set out in Strickland v.

9   Washington, 466 U.S. 668, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984). Smith v. Robbins,

10  528 U.S. 259, 285, 120 S. Ct. 746, 145 L. Ed. 2d 756 (2000); Moormann v. Ryan, 628

11  F.3d 1102, 1106 (9th Cir. 2010). The petitioner must show that counsel's performance

12  was objectively unreasonable, which in the appellate context requires the petitioner to

13  demonstrate that counsel acted unreasonably in failing to discover and brief a merit-

14  worthy issue. Smith, 528 U.S. at 285; Moormann, 628 F.3d at 1106. The petitioner also

15  must show prejudice, which in this context requires the petitioner to demonstrate a

16  reasonable probability that, but for appellate counsel's failure to raise the issue, the

17  petitioner would have prevailed in his appeal. Smith, 528 U.S. at 285-86; Moormann,

18  628 F.3d at 1106.

19         Accordingly, even if Petitioner presents a strong case of ineffective assistance of

20  counsel, this Court may only grant relief if no fairminded jurist could agree on the

21  correctness of the state court decision.

22                 3.    Analysis

23         Petitioner asserts that due to a failure of communication from his former to

24  present appellate counsel, his counsel did not include claims regarding insufficiency and

25  admissibility of the evidence in his appeal.  (Am. Pet. at 10.) Petitioner has not provided

26  further description of the claims, and so the Court has little guidance as to the nature of

27  the claims he wished to be presented and their likelihood of success.

28         First, it is noted Petitioner's co-defendant presented claims of insufficient

evidence which were decided in a reasoned opinion by the state court. The state court's resolution of co-defendant's appeals is relevant to addressing Petitioner's claims because the opinion describes the evidence presented at trial, specifically discussing Petitioner's actions during the incident.

In denying Petitioner's co-defendant's claim, the state court of appeal explained:

II. Sufficient evidence that Smith personally inflicted great bodily injury

Smith argues that there was insufficient evidence to support the finding that he personally inflicted great bodily injury on Veith. When the sufficiency of the evidence is challenged on appeal, "the court must review the whole record in the light most favorable to the judgment below to determine whether it discloses substantial evidence—that is, evidence which is reasonable, credible, and of solid value—such that a reasonable trier of fact could find the defendant guilty beyond a reasonable doubt." (People v. Johnson (1980) 26 Cal.3d 557, 578; see also People v. D'Arcy (2010) 48 Cal.4th 257, 293.)

Section 12022.7, subdivision (a), provides:

"Any person who personally inflicts great bodily injury on any person other than an accomplice in the commission of a felony or attempted felony shall be punished by an additional and consecutive term of imprisonment in the state prison for three years."

Our Supreme Court has stated that "a defendant personally inflicts great bodily harm only if there is a direct physical link between his own act and the victim's injury." (People v. Modiri (2006) 39 Cal.4th 481, 495 (Modiri).) Where a person "joins others in actually beating and harming the victim, and where the precise manner in which he contributes to the victim's injuries cannot be measured or ascertained," however, a personal-infliction finding may still properly be made. (Ibid.) Further, although being an aider and abettor of someone who personally inflicts great bodily injury is not enough by itself to support the enhancement, the imposition of the enhancement has been upheld where a defendant held a victim's head back by the hair to enable a coperpetrator to strike the victim's face with a weapon, after which the victim tried to flee and fell down a mountainside, breaking her shoulder. (People v. Dominick (1986) 182 Cal.App.3d 1174, 1210-1211 (Dominick).)

Smith argues that the enhancement finding was not supported by sufficient evidence because "the evidence is clear that any slashing or stabbing injuries were caused by Dunkhurst as opposed to Smith." We disagree.

Correctional Officer Charles Moyer testified that he saw Veith standing with his back to the wall, holding his hands up in a defensive position. At the same time, Dunkhurst and Smith were making motions with their hands. Dunkhurst was "striking at" Veith and his movements were "[l]ike a stabbing motion, small circular stabbing motions at him."

Smith "had his hand out towards Mr. Veith at the same time that Mr. Dunkhurst did, and his motion was an up-and-down type motion with his right hand." Smith's hand was "in a closed fist."

Correctional Officer Ronald Morgan saw the attack on Veith, but did not know Smith and Dunkhurst and was unable to identify them at trial. He saw two inmates confronting Veith as Veith's back was to the wall. He said, "[O]ne of the inmates that was a little more heavyset than the other one had [Veith] in a defenseless position, holding both wrists." Veith tried to pull away. At the same time, the other inmate "was attacking [Veith]." Morgan saw that inmate "making motions toward [Veith] and striking him." On the basis of this evidence, combined with the evidence of Veith's injuries and the recovery of two weapons, the jury could reasonably conclude that Smith personally inflicted great bodily injury on Veith. From Moyer's testimony that Smith moved his closed fist in an up-and-down motion toward Veith as Smith and Dunkhurst had Veith at bay against a wall, and as Dunkhurst also made stabbing movements, the jury could reasonably infer that Smith used one of the weapons against Veith and inflicted some of the wounds. This inference would be sufficient to support the great bodily injury finding under Modiri, supra, 39 Cal.4th at page 495, for this is the situation in which the defendant "joins [another] in actually beating and harming the victim, and where the precise manner in which he contributes to the victim's injuries cannot be measured or ascertained."

From Morgan's testimony that one inmate rendered Veith defenseless by holding his wrists while the other inmate attacked with striking motions, the jury could reasonably infer that Veith was being wounded during this time and that Smith either was wielding the weapon or was holding Veith while Dunkhurst wielded it. If Smith was using the weapon, it is obvious that Smith personally inflicted great bodily injury. If Smith was doing the restraining while Dunkhurst used a weapon, then the case is on all fours with Dominick, supra, 182 Cal.App.3d at pages 1210-1211, in which a defendant who restrained the victim by her hair while a coperpetrator struck her with a weapon, leading to a fall and a broken shoulder, was properly found to have personally inflicted great bodily injury.

Smith directs our attention to other evidence that he says undermines the inference that he personally inflicted great bodily injury. He argues that additional testimony Moyer gave when recalled to testify for the defense shows that Moyer did not really see Smith inflicting injury on Veith. Moyer agreed that he "never saw Mr. Smith strike Mr. Vieth ...."

He also gave the following testimony:

"Q. Did you ever see [Smith] striking out at Mr. Veith at this point?
"A. Like I said, I seen them striking at him. Their hands were closed when they made contact. I can't see."
"Q. We're at [a certain point in a video recording of the incident]. And at that point had you seen Mr. Smith strike at or make contact with Mr. Veith?
"A. All I seen was his hands were moving striking towards him. I did not see any contact.
"Q. 'Striking'? What would you describe as Mr. Smith's 'striking' motion?

1

"A. His hands were closed and he was striking towards him.

"Q. ... [¶] ... [¶] ... In [another portion of the video] is Mr. Smith making any type of striking motion?

2

"A. On this video it doesn't show it, but my angle it appeared to be he was swinging at him and his arms were moving.

3

"Q. But you don't see this in this video, do you? His arms are basically straight out in front of him; are they not?

4

"A. Mr. Smith?

"Q. Yes.

5

"A. Would you wind it back, please?

"Q. Absolutely....

6

"At any point there did you see Mr. Smith striking towards Mr. Veith in a swinging motion?

7

"A. Yes, his hands were moving. And from my position up there, it appeared to be he was swinging at him.

8

"Q. So that was just your opinion that he was swinging at him.

9

"A. Yes.

"Q. Is—in further reviewing this video, do you still believe

10

those to be swinging motions or did he simply have his hands up toward him?

11

"A. He was chasing him, so he was moving. His arms were moving.

12

"Q. So he was chasing behind him, but not swinging. His hands were simply moving?

13

"A. According to the video, yes.

"Q. Is that accurate as to what you saw?

14

"A. From what I saw at my point of view, no.

"Q. So your opinion that he was striking him is based on your

15

perspective; is that correct?

"[The prosecutor]: Objection, that's argumentative. It's asked

16

and answered.

"THE COURT: Sustained.

17

"[Smith's counsel]:

"Q. After viewing the video, would you change your

18

characterization of his hand movements at that time?

"A. From what I saw and conceived at that time, I would

19

have to.

"Q. How would you describe the hand movements now?

20

"A. As running—a running motion towards him."

21

On cross-examination by the prosecutor, Moyer stated that the

22

video was poor because of glare from the sun, and that he was able to see more clearly at the time. He also reiterated that Smith's arm movements were "going from up to down."

23

24

This testimony is open to various interpretations. Smith would have us interpret it as Moyer's total repudiation of his previous testimony that he saw Smith make striking movements toward Veith. Another interpretation

25

is that Moyer's point of view when witnessing the events revealed striking motions that were not visible from the camera's perspective, and Moyer

26

merely acknowledged that what he saw and what the video showed were different. Neither Smith's interpretation nor ours is important, however, for

27

purposes of a sufficiency of the evidence appeal. Within reason, the intepretation and weight given to the testimony were matters for the jury.

28

The facts are simply that Moyer first testified that he saw Smith striking

1  toward Veith with a closed hand and later testified that Smith's motions in
2  the video looked different from the way he remembered them. The jury
   could reasonably find that the earlier testimony was persuasive in spite of
   the later testimony.

3      Smith also argues that Modiri is not controlling because "[t]his is not
4  a case where Smith personally used force against ... Veith and it is not
   possible to determine the cause of Veith's great bodily injury." He argues,
5  first, that "[t]here was not any evidence presented that Smith made any
   stabbing or slashing motions toward Veith ...." As we have just said,
6  however, the jury reasonably could have accepted Moyer's testimony that
   Smith made striking motions toward Veith and reasonably could have
7  inferred that he was using one of the weapons when he did so.

8      Next, Smith argues that there was not "any evidence presented that
   it could not be determined who inflicted the slashing type injuries on Veith
9  ...." We disagree. There was evidence that Smith and Dunkhurst both
   assaulted Veith; that both made aggressive hand motions toward him
10 during a short, confused burst of activity; that he sustained extensive cuts;
   and that two sharp implements were recovered from the scene of the
11 attack. From this the jury could reasonably infer that Veith sustained cuts
   from both defendants and that any determination of which defendant
12 inflicted which injuries would be speculative. Contrary to Smith's
   arguments, this inference is not defeated by the facts that only Dunkhurst
13 was seen putting something in the drain where the weapons were found
   and only Dunkhurst was convicted of possessing a weapon. The jury
14 could reasonably infer that there were two weapons because there were
   two assailants, and only Smith succeeded in disposing of his weapon
15 without being observed. The inference also was not defeated by the fact
   that only Dunkhurst's motions were described as stabbing or slashing
16 motions. The jury could reasonably find that Smith was moving his hands
   in a way consistent with inflicting Veith's injuries.

17     Attempting to distinguish Dominick, supra, 182 Cal.App.3d 1174,
18 Smith argues that this "is not a case where there was evidence from which
   the jury could conclude that force applied by Smith could have caused the
19 great bodily injury." As we have said, however, Morgan's testimony
   showed that Smith restrained Veith while Dunkhurst attacked him or vice
20 versa. Smith says Morgan's testimony was only that one inmate struck
   Veith while the other restrained him, not that the inmate slashed or
21 stabbed Veith, but this does not show a lack of substantial evidence to
   support the jury's finding. Slashing wounds were the wounds Veith
22 sustained. The jury could reasonably infer that these are the injuries
   Morgan saw being inflicted.

23 People v. Smith, 2012 Cal. App. Unpub. LEXIS 3099, 6-16 (Apr. 25, 2012). Based on the

24 state court's analysis regarding Smith's claim, it is unlikely that Petitioner's claim of

25 insufficiency of the evidence would fare differently. As discussed, both correctional

26 officers Morgan and Moyer testified that they personally saw Petitioner make stabbing

27 motions towards the victims. Regardless of any inconsistencies between the witnesses

28 testimony, if any, under the standard set forth under Jackson v. Virginia, "the relevant

14

1    question is whether, after viewing the evidence in the light most favorable to the

2    prosecution, *any* rational trier of fact could have found the essential elements of the

3    crime beyond a reasonable doubt." 443 U.S. 307, 319, 99 S. Ct. 2781, 61 L. Ed. 2d 560

4    (1979) (emphasis in original). Here, there is little doubt that based on the statements of

5    the correctional officers, there was evidence that Petitioner stabbed the victim, causing

6    great bodily injury. Petitioner has not shown that his sufficiency of the evidence claim

7    was meritorious.

8        Likewise, it is unclear what claim regarding the admission of evidence Petitioner is

9    claiming that his appellate counsel failed to make. As described above, while other

10   evidence was admitted, the crucial evidence providing support to Petitioner's guilt was

11   the testimony of the correctional officers in describing what they observed took place

12   during the confrontation. Such witness testimony is clearly admissible, and was likely

13   influential in the jury's determination of guilt. To the extent that Petitioner could show that

14   the admission of other evidence was improper, it is likely that the result of the admission

15   was harmless in light of the other evidence presented. See Brecht, 507 U.S. at 637-638

16   (habeas relief not warranted unless the error had a "substantial and injurious effect or

17   influence in determining the jury's verdict.").

18       Accordingly, Petitioner has not shown that counsel's performance was objectively

19   unreasonable in failing to present these issues on appeal, and not has he shown that

20   there was a reasonable probability that the claim would have prevailed on appeal. Smith,

21   528 U.S. at 285-86; Moormann, 628 F.3d at 1106. Petitioner is not entitled to relief with

22   regard to his claim of ineffective assistance of appellate counsel.

23       **B.    Claim Two: Right to a Speedy Trial**

24       Petitioner claims that his Sixth Amendment right to a speedy trial was violated by

25   continuances of the trial date at the request of the prosecution, including a request for an

26   extension due to the vacation plans of a witness.  (Am. Pet. at 10-11.)

27           1.    State Court Decision

28       Petitioner presented this claim by way of a petition for writ of habeas corpus to the

1  California Supreme Court. (Lodged Doc. 10.) The court denied the petition without

2  comment. (Lodged Doc. 11.) The state court decision did not address the merits of the

3  claim. Therefore, the Court, under § 2254(d), must determine what arguments or

4  theories could have supported the state court's decision and determine whether it is

5  possible fairminded jurists could disagree that those arguments or theories are

6  inconsistent with Supreme Court law. Richter, 131 S. Ct. at 786.

7  2.    Law Applicable to Speedy Trial Claims

8  "The Sixth Amendment guarantees that [i]n all criminal prosecutions, the accused

9  shall enjoy the right to a speedy ... trial." Vermont v. Brillon, 556 U.S. 81, 89, 129 S. Ct.

10  1283, 173 L. Ed. 2d 231 (2009) (citations and internal quotation marks omitted,

11  alterations in original); Doggett v. United States, 505 U.S. 647, 651, 112 S. Ct. 2686, 120

12  L. Ed. 2d 520 (1992); Barker v. Wingo, 407 U.S. 514, 515, 92 S. Ct. 2182, 33 L. Ed. 2d

13  101 (1972). The court must balance four factors in determining whether there has been

14  a violation of the right to a speedy trial: (1) the length of the delay; (2) the reason for the

15  delay; (3) whether the defendant asserted the right to a speedy trial; and (4) whether the

16  defendant suffered prejudice as a result of the delay. See Doggett, 505 U.S. at 651

17  (citing Barker, 407 U.S. at 530). No one factor is necessary or sufficient and there is no

18  affirmative demonstration of prejudice necessary to prove a violation of the right to a

19  speedy trial; instead, the four related factors "must be considered together with such

20  other circumstances as may be relevant." Moore v. Arizona, 414 U.S. 25, 26, 94 S. Ct.

21  188, 38 L. Ed. 2d 183 (1973) (per curiam) (citation omitted).

22  The Supreme Court split the first inquiry, the length of delay, into two steps. First,

23  in order to trigger a full speedy trial analysis, "an accused must allege that the interval

24  between accusation and trial has crossed the threshold dividing ordinary from

25  'presumptively prejudicial' delay." Doggett, 505 U.S. at 651-52. If this threshold is not

26  met, the court does not proceed with the other Barker factors. United States v. Beamon,

27  992 F.2d 1009, 1012 (9th Cir. 1993). The Supreme Court has observed that courts

28  generally have found delays approaching one year sufficient to trigger the Barker inquiry.

16

1    Doggett, 505 U.S. at 652 n.1. The Ninth Circuit has found a six-month delay to constitute

2    a "borderline case" sufficient to trigger an inquiry into the remaining Barker factors, see

3    United States v. Valentine, 783 F.2d 1413, 1417 (9th Cir. 1986), although it also has

4    observed that there is a general consensus among the courts of appeals that eight

5    months constitutes the threshold minimum. United States v. Gregory, 322 F.3d 1157,

6    1162 n.3 (9th Cir. 2003).

7        If the delay passes this minimum threshold, then the court must consider "as one

8    factor among several, the extent to which the delay stretches beyond the bare minimum

9    needed to trigger judicial examination of the claim." Doggett, 505 U.S. at 652; see also

10   Brillon, 129 S. Ct. at 1287 (overall delay of nearly three years between arrest and trial

11   triggered Barker evaluation of reasons for delay); United States v. Mendoza, 530 F.3d

12   758, 762 (9th Cir. 2008) ("If the length of delay is long enough to be considered

13   presumptively prejudicial, an inquiry into the other three factors is triggered."). In other

14   words, the first Doggett/Barker factor directs that if the period between accusation and

15   trial is sufficiently long to be presumptively prejudicial, the court must then inquire further

16   as to all four factors.

17       In reviewing the factors, the court must consider "whether the government or the

18   criminal defendant is more to blame" for the delay. Doggett, 505 U.S. at 651. Deliberate

19   delay by the government "'to hamper the defense' weighs heavily against the

20   prosecution." Brillon, 129 S. Ct. at 1290 (quoting Barker, 407 U.S. at 531). A more

21   neutral reason such as negligence should be considered as well, although its weight

22   should be less heavy. Barker, 407 U.S. at 531. "[A] valid reason, such as a missing

23   witness, should serve to justify appropriate delay." Id. "In contrast, delay caused by the

24   defense weighs against the defendant under standard waiver doctrine." Brillon, 129 S.

25   Ct. at 1290. Because defense attorneys act as a defendant's agent, and are not state

26   actors, "delay caused by the defendant's counsel is also charged against the defendant"

27   whether counsel is privately retained or appointed by the state. Id. at 1290-91. The Ninth

28   Circuit considers the reason for delay to be the focal point of the inquiry. See United

States v. King, 483 F.3d 969, 976 (9th Cir. 2007) (reasons for delay weigh heavily against finding a Sixth Amendment violation where district judge granted defendant's requests for continuances, defendant was explained his right to a speedy trial before agreeing to continuances, the case was extraordinarily complex, and defendant substituted a new attorney halfway through the proceedings).

### 3.   Factual Background

Here, the original complaint was filed on February 19, 2009, and Petitioner was held to answer on March 11, 2009. (Clerk's Tr. at 1, 3.) Petitioner's trial began on June 28, 2010. (Id. at 148.) Assuming that the right to a speedy trial attached when Petitioner was held to answer on the original complaint, over fifteen months elapsed between the initiation of criminal proceedings and the commencement of trial.

Between May 15, 2009, and January 21, 2010, Petitioner requested, and was granted, ten continuances. (Clerk's Tr. at 84, 85, 86, 88, 90, 91, 96, 99, 100, 101.) Petitioner also brought two Marsden[1] motions (Id. at 89, 91) and a Faretta[2] motion (Id. at 91) challenging the effectiveness of counsel and requesting to represent himself at trial. Two days after Petitioner's Faretta motion was granted, he reversed course and requested that his counsel be reappointed. (Clerk's Tr. at 96.)

Of critical concern to this claim was the delay created by the unavailability of a prosecution witness.  During a pretrial hearing held on March 12, 2010, the prosecution informed the trial court that a material witness, Investigator Jeff Stamper, would be away on vacation on the scheduled trial date of April 6, 2010, and requested that the trial be continued to a later date. (Clerk's Tr. 103-04.) According to the prosecution, Stamper interviewed the victim after the assault. (Id.) Petitioner and his co-defendant opposed the prosecution's request for a continuance. (Rep. Tr. at 402-06.) They argued that Investigator Stamper was not a material witness, and that the prosecution had been aware of Investigator Stamper's unavailability for several months. (Id. at 502-03.) The

---

[1] People v. Marsden, 2 Cal. 3d 118 (1970).
[2] Faretta v. California, 422 U.S. 806 (1975).

1  trial court found that there was good cause to grant the continuance, and that there had

2  been "no showing of prejudice to the defendants." (Id. at 505.) The court continued the

3  trial date until June 28, 2010. (Id. at 506.) Accordingly, the request from defense counsel

4  for a continuance delayed trial by less than two months.

5                    4.    Analysis

6        The criminal complaint was filed against the Petitioner on February 19, 2009, and

7  Petitioner was held to answer on March 11, 2009. (Clerk's Tr. at 1, 3.) Petitioner's trial

8  began on June 28, 2010. (Id. at 148.) Assuming that the right to a speedy trial attached

9  when Petitioner was held to answer on the original complaint, over fifteen months

10  elapsed between the initiation of criminal proceedings and the commencement of trial.

11  Accordingly, the over one year delay in Petitioner's case is presumptively prejudicial and

12  triggers the consideration of the factors set forth above. Doggett v. U.S., 505 U.S. at 652

13  n.1. Even though the delay requires a full review under the Barker factors, it is noted that

14  the delay is only slightly over the one year threshold, and therefore the length of the

15  delay only militates slightly in Petitioner's favor. United States v. Murillo, 288 F.3d 1126,

16  1132 (9th Cir. 2002).

17        In reviewing the record, with regard to the second factor, i.e., reason for the delay,

18  it does not appear to weigh in Petitioner's favor. As described above, much of the delay

19  was attributable to the actions of Petitioner. Petitioner requested numerous

20  continuances, which was the sole cause of delays in the trial from the period between

21  May 15, 2009 and January 21, 2010. The record demonstrates that defense counsel's

22  need to prepare for trial was the primary reason for the delay. In general, delays caused

23  by defense counsel, including requesting continuances, are properly attributed to the

24  defendant. See Vermont v. Brillon, 556 U.S. at 94. While some delay of the trial is

25  attributable to the prosecution, a significant portion of the delay was attributable to

26  Petitioner. The second Barker factor does not weigh strongly in Petitioner's favor.

27        With regard to the third factor, the assertion of the right to a speedy trial,

28  Petitioner did not assert the right until March 16, 2010, after Petitioner had requested

1    over eight months of continuances. If a defendant asserts his speedy trial rights after

2    requesting continuances, this factor does not weigh in favor of finding a speedy trial

3    violation. United States v. Corona-Verbera, 509 F.3d 1105, 1116 (9th Cir. 2007).

4    Although Petitioner asserted his constitutional right to a speedy trial, he also acquiesced

5    in much, if not all of the delay from May 15, 2009 and January 21, 2010. Thus, this factor

6    weighs only somewhat in Petitioner's favor. See United States v. King, 483 F.3d 969,

7    976 (9th Cir. 2007) (third Barker factor did "not strongly counsel in favor of finding a Sixth

8    Amendment violation" because "[a]lthough [petitioner] at times asserted his right to a

9    speedy trial, at other times he acquiesced in and sought continuances and exclusions of

10   time").

11        The final factor, i.e., prejudice, does not weigh in Petitioner's favor. The Supreme

12   Court has identified three types of prejudice caused by excessive delay: (1) oppressive

13   pretrial incarceration; (2) anxiety and concern of the accused; and (3) impairment of the

14   defense. Barker, 407 U.S. at 532. None of the factors weigh in favor of Petitioner. First,

15   Petitioner was already serving a life sentence in prison, which negates any contention

16   that the pretrial incarceration was oppressive. While Petitioner claims that his case was

17   impaired because the unavailable witness was allowed to testify due to the continuance,

18   he has not shown how the delay impaired his defense. Petitioner has not asserted that

19   any evidence or witnesses were no longer available to him in light of the delay

20   attributable to the government. With regard to the possible impairment of the defense

21   based on witnesses fading memory, only several months of delay were attributable to

22   the government. It is unlikely that the witness' ability to recall the events were

23   significantly impaired by the relatively short delay. The additional delay attributed to

24   postponing the second trial was not likely a substantial factor impairing Petitioner's

25   defense.

26        For the reasons discussed above, the Court finds that Petitioner would not be

27   successful in his claim that his federal speedy trial rights were violated. Specifically, he

28   has failed to satisfy the "unreasonable application" prong of § 2254(d)(1) by showing that

1    there  was no reasonable basis for the state courts' denial of that claim. Pinholster, 131

2    S. Ct. at 1402. Petitioner is not entitled to habeas relief with regard to claim two.

3        **C.     Claim Three: Insufficient Evidence**

4        Petitioner, in his third claim for relief asserts that there was insufficient evidence to

5    support his convictions. Petitioner contends that photographic evidence of the weapon

6    was improperly admitted based on the prosecution's failure to establish a chain of

7    custody regarding how they retrieved the weapon from the drain in the recreation yard,

8    and that without the evidence, there was insufficient evidence to support his convictions.

9            1.    Legal Standard

10       The Fourteenth Amendment's Due Process Clause guarantees that a criminal

11   defendant may be convicted only by proof beyond a reasonable doubt of every fact

12   necessary to constitute the charged crime. Jackson v. Virginia, 443 U.S. 307, 315-16, 99

13   S. Ct. 2781, 61 L. Ed. 2d 560 (1979). Under the Jackson standard, "the relevant

14   question is whether, after viewing the evidence in the light most favorable to the

15   prosecution, *any* rational trier of fact could have found the essential elements of the

16   crime beyond a reasonable doubt." Jackson, 443 U.S. at 319 (emphasis in original).

17       In applying the Jackson standard, the federal court must refer to the substantive

18   elements of the criminal offense as defined by state law. Jackson, 443 U.S. at 324 n.16.

19   A federal court sitting in habeas review is "bound to accept a state court's interpretation

20   of state law, except in the highly unusual case in which the interpretation is clearly

21   untenable and amounts to a subterfuge to avoid federal review of a constitutional

22   violation." Butler v. Curry, 528 F.3d 624, 642 (9th Cir. 2008) (quotation omitted).

23           2.    State Court Decision

24       Petitioner presented this claim by way of a petition for writ of habeas corpus to the

25   California Supreme Court. (Lodged Doc. 10.) The court denied the petition without

26   comment. (Lodged Doc. 11.) The state court decision did not address the merits of the

27   petition. Therefore, the Court, under § 2254(d), must determine what arguments or

28   theories could have supported the state court's decision and determine whether it is

1 | possible fairminded jurists could disagree that those arguments or theories are

2 | inconsistent with Supreme Court law. <u>Richter</u>, 131 S. Ct. at 786.

3 |         3.      Analysis

4 |      Although Petitioner framed his claim as one of insufficient evidence, Petitioner

5 | appears to challenge the admissibility of evidence surrounding the photographic

6 | evidence of the weapon found in the drain of the recreation yard. (<u>See</u> Traverse at 10-

7 | 11.) Petitioner asserts that it was a due process violation to not provide photographic

8 | evidence regarding the method and tools used to recover the weapon from the drain.

9 | (<u>Id.</u>)

10 |      To the extent that Petitioner argues that the evidence was illegally obtained, his

11 | claim must fail. A federal district court cannot grant habeas corpus relief on the ground

12 | that evidence was obtained by an unconstitutional search and seizure if the state court

13 | has provided the petitioner with an "opportunity for full and fair litigation of a Fourth

14 | Amendment claim." <u>Stone v. Powell</u>, 428 U.S. 465, 482, 96 S. Ct. 3037, 49 L. Ed. 2d

15 | 1067 (1976); <u>Moormann v. Schriro</u>, 426 F.3d 1044, 1053 (9th Cir. 2005). The only inquiry

16 | this Court can make is whether petitioner had a fair opportunity to litigate his claim, not

17 | whether petitioner did litigate nor even whether the court correctly decided the claim.

18 | <u>Ortiz-Sandoval v. Gomez</u>, 81 F.3d 891, 899 (9th Cir. 1996); <u>see also</u>, <u>Gordon v. Duran</u>,

19 | 895 F.2d 610, 613 (9th Cir. 1990) (holding that because Cal. Penal Code § 1538.5

20 | provides opportunity to challenge evidence, dismissal under <u>Stone</u> was necessary even

21 | when the petitioner never moved to suppress). Petitioner has not asserted that he lacked

22 | an opportunity to present the claim in state court. To the extent that the state court

23 | denied Petitioner's claim based on admissibility grounds, Petitioner has not shown that

24 | he is entitled to federal habeas relief.

25 |      Likewise, Petitioner has not shown there was insufficient evidence to support his

26 | convictions. Petitioner was convicted of assault with a deadly weapon by means of force

27 | causing great bodily injury by an prisoner serving a life sentence (Cal. Penal Code §

28 | 4500), possession of a weapon in a penal institution (Cal. Penal Code § 4502), and that

1   Petitioner inflicted great bodily injury on the victim (Cal. Penal Code § 12022.7(a)).

2         In this case, based on the other evidence alone, any rational trier of fact could find

3   Petitioner guilty of all the elements of the three crimes of conviction. It is without question

4   that at the time of incident Petitioner was serving a life sentence. The prosecution

5   presented direct testimony from correctional officer Charles Moyer who explained that he

6   saw Petitioner and his co-defendant attacking the victim. (Rep. Tr. at 938-39.) The officer

7   described the distinct stabbing motion that Petitioner used to strike the victim. (Id. at 738-

8   40, 938-40.) Correctional officer Ronald Morgan witnessed the altercation, but instead

9   testified that one assailant was holding the victim while the other assailant was stabbing

10  the victim. (Rep. Tr. at 1040-42.) However, Morgan could not identify the assailants. (Id.)

11  Despite the conflicting testimony provided by the correctional officers, any reasonable

12  trier of fact could, based on the testimony of officer Moyer alone, determine that

13  Petitioner assaulted the victim with a weapon.

14        Further, officer Morgan testified that after the assault he saw Petitioner fall to the

15  ground and move his hands towards a nearby drain. (Rep. Tr. at 742-430.) Correctional

16  officer Eric Lawton testified that after the incident he searched and retrieved two

17  weapons from the drain in question. (Rep. Tr. at 1212-13.)

18        Respondent contends that based on the testimony provided by correctional

19  officers that saw Petitioner and his co-defendant attack the victim and found two

20  weapons in the vicinity of the assault, that there was sufficient evidence that Petitioner

21  assaulted the victim. Petitioner only contends that photographic evidence of the

22  weapons was not properly admitted.

23        Viewing the evidence in the light most favorable to the prosecution, there is

24  sufficient evidence to show that Petitioner assaulted the victim with a weapon. At least

25  one correctional saw Petitioner make stabbing motions towards the victim, and weapons

26  were found in the area. Further, the victim suffered multiple wounds and was bleeding

27  profusely after the attack. Based on the testimony, any reasonable trier of fact could infer

28  that Petitioner assaulted the victim with one of the weapons. Under Jackson and

1  AEDPA, the state decision is entitled to double deference on habeas review. Based on

2  the Court's independent review of the trial record, it is apparent that Petitioner's

3  challenge to his conviction assault with a deadly weapon by a life inmate is without merit.

4  Likewise, based on the same evidence there was sufficient evidence to convince

5  any trier of fact that Petitioner possessed a weapon in the penal institution, and that

6  Petitioner caused great bodily injury to the victim. Reasonable inferences could be made

7  that Petitioner possessed one of the weapons found in the drain where he was seen

8  attempting to dispose of the weapons and that Petitioner caused one or more of the

9  serious injuries suffered by the victim. Petitioner has not shown that the state court was

10  unreasonable in denying his claims. There was no constitutional error, and Petitioner is

11  not entitled to relief with regard to this claim.

12  **D.     Claim Four: Illegal Sentence**

13  Petitioner contends that state court errors resulted in an unfair sentence. (Am.

14  Pet. at 15-17.) Petitioner further asserts that the errors resulted in violations of his Due

15  Process and Fifth Amendment rights. (Id.) While unclear, it appears that Petitioner

16  claims that the trial court erred in failing to stay one of his sentences. (Id.)

17  1.     State Court Decision

18  Petitioner presented this claim by way of a petition for writ of habeas corpus to the

19  California Supreme Court. (Lodged Doc. 10.) The court denied the petition without

20  comment. (Lodged Doc. 11.) The state court decision did not address the merits of the

21  petition. Therefore, the Court, under § 2254(d), must determine what arguments or

22  theories could have supported the state court's decision and determine whether it is

23  possible fairminded jurists could disagree that those arguments or theories are

24  inconsistent with Supreme Court law. Richter, 131 S. Ct. at 786.

25  2.     Analysis

26  Petitioner's claim does not merit federal habeas relief. First, federal habeas relief

27  is limited to addressing violations of federal law. Estelle v. McGuire, 502 U.S. 62, 67-68,

28  112 S. Ct. 475, 116 L. Ed. 2d 385 (1991). As such, to the extent Petitioner's claim is

1    based solely on the trial court's alleged misapplication of California law (Cal. Penal Code
2    § 654), such a claim is not cognizable on federal habeas review.

3        Second, the Court has not found any U.S. Supreme Court precedent, nor do the
4    parties cite any, that squarely addresses whether a criminal defendant has a
5    constitutional right to challenge the application of state sentencing laws.[3] In the absence
6    of such Supreme Court precedent, the Court cannot conclude that the state court's
7    decision was contrary to, or involved an unreasonable application of, clearly established
8    Federal law. 28 U.S.C. § 2254(d)(1); Wright v. Van Patten, 552 U.S. 120, 126, 128 S. Ct.
9    743, 169 L. Ed. 2d 583 (2008) (per curiam); Moses v. Payne, 555 F.3d 742, 754 (9th Cir.
10   2009).

11       Third, even assuming that there had been a constitutional violation, any error was
12   harmless. See Brecht, 507 U.S. at 637-638 (habeas relief not warranted unless the error
13   had a "substantial and injurious effect or influence in determining the jury's verdict.").
14   Here, Petitioner has not shown how the state court's application of sentencing laws was
15   harmful to Petitioner.

16       For the reasons discussed above, the Court finds that Petitioner would not be
17   successful in his claim that his sentence was illegal. Specifically Petitioner fails to
18   demonstrate that the state court rejection of his claim "resulted in a decision that was
19   contrary to, or involved an unreasonable application of, clearly established Federal law,
20   as determined by the Supreme Court of the United States." 28 U.S.C. § 2254(d). The
21   claim should be denied.

22   **V.    RECOMMENDATION**

23       Accordingly, it is hereby recommended that the petition for a writ of habeas
24   corpus be DENIED with prejudice.

25       This Findings and Recommendation is submitted to the assigned District Judge,
26   pursuant to the provisions of Title 28 U.S.C. § 636(b)(1).  Within thirty (30) days after

27   _____
28        [3] The Court notes that Petitioner has not alleged an Eighth Amendment Cruel and Unusual Punishment claim. Instead, he asserts that the application of the sentences was illegal.

being served with the Findings and Recommendation, any party may file written objections with the Court and serve a copy on all parties.  Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendation."  Any reply to the objections shall be served and filed within fourteen (14) days after service of the objections.  The parties are advised that failure to file objections within the specified time may waive the right to appeal the District Court's order. Wilkerson v. Wheeler, 772 F.3d 834, 839 (9th Cir. 2014).

IT IS SO ORDERED.

Dated:   April 29, 2015            /s/ Michael J. Seng
                                   UNITED STATES MAGISTRATE JUDGE